Mr. Fox. May it please the court. My name is Ryan Fox and I represent the appellant Mertza Golden. When considering leave as a reasonable accommodation, there should not be a per se rule regarding the length of leave. Instead, each case must be scrutinized on its individual facts. The facts of this case are straightforward. After nearly 17 years as a public safety officer for the Indianapolis Housing Agency, Ms. Golden was diagnosed with breast cancer. As a result, she took 12 weeks of FMLA leave and an additional 4 weeks of leave. According to IHA, 16 weeks is the full amount of leave given to those individuals regarding medical leave. As such, Ms. Golden was automatically scheduled to be terminated at the expiration of her 16 weeks of leave. However... Now, I'm going to ask you this please. Once Ms. Golden applied for long-term disability, claiming she could not work at all, did she give up the ability to later claim that she was a qualified individual with a disability for ADA Rehab Act purposes? No. Because under the ADA, she can be entitled to what is called a reasonable accommodation. And here, based on the particular circumstances of the case and the run of cases under U.S. v. Barnett, Ms. Golden should have been given that opportunity. However, IHA did not make Ms. Golden aware of a certain leave of absence policy. And that policy, which Ms. Golden only learned about a day or two before her termination through the FOP president, was that IHA had a general leave of absence policy that allowed individuals unpaid leave for up to six months. The day before she was terminated, Ms. Golden, after discovering this policy, emailed the Director of Human Resources, Kathy Golden, and requested a six-month leave, excuse me, requested leave per the city policy, which would have enabled her leave up to and including October 14th of 2015. At that point, what IHA should have done is engaged in the interactive process. But instead, without any explanation or engagement in any interactive process, it summarily denied this request the very next day. The district court here ignored the precedent established in Barnett. Barnett requires a two-step process. The first step requires the employee to show that the accommodation is a type that is reasonable in the run of cases. The second step varies depending on the outcome of the first. If the accommodation is shown to be a type of accommodation that is reasonable in the run of cases, the burden then shifts to the employer to show that granting the accommodation would impose an undue hardship under the particular circumstances of the case. On the other hand, if the accommodation is not shown to be a type of accommodation that is reasonable in the run of cases, the employee can still prevail by showing that special circumstances warrant a finding that accommodation is reasonable under the particular facts of this case. Now, for the benefit of hindsight, on what date would you say she was able to return to work with light-duty accommodations? Light-duty accommodations, she was available to return to work on July 6th of 2015. However, she was never given the opportunity to even look for a right-to-return-to-work date because they summarily dismissed her based on their 16-week automatic termination policy. And is an employer of police officers required to provide permanent light-duty positions to an employee who cannot perform all of the normal duties of the job? Well, they are required to accommodate if there is a position available. And here, although the district court didn't get there, there is evidence on the record that light-duty work was available to public safety officers. Okay. You're dealing – that was from the affidavit from Plaintiff's husband, right? Correct, who is the director of the department. And is there a difference between light-duty work and a light-duty position? It's unclear. In Barnett v. USI, with regards to Barnett, they dealt with the term vacant. What's a vacant position? We are assured here because the district court, although the district court didn't look into it, there was light-duty work available. Thus, there was enough work to do. And Steve Golden, who also IHA admitted with regards to the Simmons, admitted that if anyone was to know, Mr. Golden would have known what light-duty work was available. In fact, I think his testimony was, we sit around a computer and we hardly ever leave the office. But unfortunately, we never got – Mr. Fox? Yes. May I ask you, the central problem in this case seems to, at least to me, to involve the interaction between the FMLA and the ADA Rehabilitation Act. As I understand it, in the statutory language of the ADA, which you have to rely upon here, there are no references to leave or at least long-term leave as accommodation. That's an issue that Congress addressed in the FMLA. Complex policy compromise in terms of who's eligible, which employers are covered, how long the leave should last. And your position here seems to be, well, yeah, I get that, but then I'm also entitled to this additional form of a reasonable accommodation in the form of not working for many months under the ADA and Rehab Act. Correct. Because under Barnett, if, first of all, as referenced in the Department of Justice amicus brief and the appellant's brief here, this court, in fact, has recognized unpaid medical leave as an accommodation. Could you address the Byrne case, then? The Byrne case, which this district court relied upon, basically said that two months of medical leave was unreasonable as a matter of law. And that contradicts the Barnett framework, which allows leave under certain circumstances. So we should overrule Byrne? In that case as a matter of law, yes, Your Honor, because medical leave has been adopted by other cases that says it is a reasonable accommodation. But one has to look at the particular circumstances of the case. And the particular circumstances of the case is this particular defendant had a policy in place that allowed for individuals to take up to six months of leave. And as soon as my client made the accommodation request for leave per this policy, that then pressed some burden on, although it's not a separate claim, for the defendant to engage in the interactive process. You pointed out in your brief, I don't think you asked us to overrule Byrne, but you pointed out that that was decided before the 2008 amendments to the ADA. In what respect do you think those amendments undermine Byrne? Well, the ADA amendments would broaden the powers in terms of what is considered a disability under the ADA. With considered to Byrne specifically, though, Byrne was an idea where the employer had no idea what the actual disability was, nor did even the employee at the time was aware of the disability. So do the amendments expand the notion of reasonable accommodation to extend to long-term medical leave? No, the amendments not necessarily, Your Honor. So the amendments don't really have an effect on Byrne? Not in terms of when we're talking about necessarily reasonable accommodation in this particular case, Your Honor. What is established, though, is that here we have a case where special circumstances did apply. First of all, just before termination, she met with the director of human resources, my client did, and they did not tell her anything about this general leave of absence policy that would have enabled her leave. Does that policy, is that something that establishes a right? It's part of the policy of the... It looked to me like it was totally discretionary. It is discretionary in terms of the director. But then if the court is able to establish that this is a reasonable type of accommodation in the run-up cases or because of the particular circumstances of the case, then that burden is going to have to go and shift to the employer to show that there was some sort of undue hardship. And here the employer, and it is clear in the record that they could not produce any undue hardship by simply granting this unpaid medical leave for a six-month period. And it's shown later, if they would have, my client would have been able to return well within the six-month period. How about without restrictions? She could not return without restrictions. She would have been placed on no more than eight hours per day. She would have had a lifting restriction, I believe, of 15 pounds, and she could work 20 hours per week. Okay. I see that already. Do you think she would never have been able to return to full duty with no accommodations? As of today, she would be able to return to duty with no accommodations. And on what date do you think that would have started? Well, my client has breast cancer. So there were times that there were some times where she was released without restrictions. Other times the restrictions were less. Other times the restrictions were more. But the district court never allowed us to even go there because they never engaged in the interactive process in terms of the defendant. Thank you. Thank you, Mr. Fox. Ms. Delaney. May it please the Court. My name is Kathleen Delaney. I represent the Indianapolis Housing Agency, which is a federally funded entity which provides public housing to people in Indianapolis. There are three reasons why this court should affirm the district court's grant of summary judgment. You know, before we get into those, if I'm reading it correctly, your position seems to be, and I think it was stated outright in your brief on summary judgment in the district court, that IHA's policy is to terminate all employees who take 16 weeks of consecutive medical leave and are not able to return to work. And that's on page 20 of the summary judgment brief below. Now, wouldn't such a policy be a per se violation of the ADA Rehab Act's requirement of reasonable accommodation? Your Honor, the issue here is that there was no request for reasonable accommodation. At the end of the 16 weeks, Ms. Golden had to go. IHA could discuss reasonable accommodations under the ADA after she exhausted her 16 weeks? Yes, Your Honor. There was a letter from Richard Simmons, who is the human resources specialist, dated March 3rd. And did that before it all ended? Yes, he sent that letter on March 13, 2015. Is that reasonable? I'm sorry, I'm having a little bit of trouble. Yeah, I know. I'm so sorry. Is that reasonable to send that letter to be received the very day before? No, ma'am. Your Honor, it was a month before. It was March 13, 2015. Her termination date was April 14, 2015. And Mr. Simmons' letter very specifically says, your most recent health care provider form does not provide a return to work date and also does not provide any information about whether you can return in a part-time capacity or whether you need any accommodations. So a month before the April 13 meeting in the human resources department, the issue of whether an accommodation was needed was raised by the human resources department. But when Ms. Golden appeared unannounced, unscheduled, for her meeting on April 13, she only asked about long-term disability and retirement benefits. And as of that time, all indications from Ms. Golden were that she did not intend to return to work because she was not able to, and instead she intended to take long-term disability leave. Well, see, here's what seems odd about your position to me. It's that Ms. Golden had cancer, and people often recover completely from cancer, and then they can lead perfectly normal lives. She didn't have MS or fibromyalgia or some other chronic illness. She had an illness that is usually either terminal or something from which one can recover completely. So to say she was not qualified because she could not work seems to me to miss the point of the ADA and the Rehab Act. Isn't the purpose of these acts to accommodate people who cannot work temporarily in the hopes that they'll recover and get back to being productive workers? Your Honor, as was discussed in the Byrne case, the Family and Medical Leave Act is for people who are unable to work. The ADA and Rehab Act are for qualified individuals who are able to work with or without an accommodation. I'd like to read to you from Ms. Golden's deposition testimony. I asked her, from December 17, 2014, through April 15, 2015, you did not ask for any reasonable accommodation from IHA, correct? And Ms. Golden answered, I did not ask IHA. I did not tell IHA I could work because I could not. She simply was unable to work with any kind of accommodation, and in fact was not released to return to work until January of 2017 without restrictions. And furthermore, when she was deposed on December 1 of 2015, she confirmed that there was not a single day between her termination and December 1 of 2015 where she could work a single day. And that's why she hadn't applied for any job, part-time, full-time, or anything, because she was simply unable to work. I'm confused on some dates here. Sure. What year was it that she left? 2015. Okay. You were talking about, okay, she left in the spring of 2015. The deposition is December. It was in December after. I was confused. I'm straightened out. Thank you. No problem. I may have interrupted Judge Rovner. No problem. If IHA had a policy of allowing extended leave for some things like military service, isn't that per se evidence that it's able to accommodate such extended leaves subject to individual findings of hardship? No, Your Honor, because the testimony is undisputed that the general leave of absence policy did not apply in this situation. There's no evidence in the record that a general leave of absence has ever been granted to anyone as a tack-on to FMLA leave or medical leave. The only examples that were provided were for military leave or sabbatical, but, again, there's no evidence in the record that anyone has ever taken a leave under that policy. But the agency did inform Ms. Golden of the existence of the general leave of absence policy. It's in the handbook for which she signed an acknowledgment, and she testified that she signed that acknowledgment and knew she was responsible for understanding what was in her handbook. The policy didn't apply, and the Human Resources Director's testimony on that point is uncontested. If anyone asks for medical leave, really able to guarantee a return date? Really guarantee a return date? Your Honor, Ms. Golden had taken a prior medical leave in 2013, and she did provide a return-to-work date and did provide the necessary paperwork, and everything went very smoothly. In this situation, her condition did not allow her to return to work in any capacity for a very extended period of time, and she signed paperwork on July 3 of 2015 saying that she was totally disabled and unable to work. And so this isn't a situation where the agency could have accommodated her because the nature of her condition was such that no accommodation would enable her to perform the very physically demanding job of a police officer. So all indications to the agency were that Ms. Golden was unable to work and that she intended to instead take long-term disability benefits. And so the agency cooperated and assisted her in that process. We had multiple statements from her doctor that her treatment was ongoing and that her inability to return to work was for an undefined period of time. At the same time, Ms. Golden was completing paperwork attesting that she was unable to do her job and unable to even take care of herself. She said that she could not bathe on her own or walk up and down stairs on her own. She was not able to perform the activities of daily living without assistance throughout this period of time through and including July of 2015 when she signed a supplemental disability form. Moreover, no request for accommodation was ever made. The after-hours email referred to an unpaid leave of absence per city policy. It did not provide a return-to-work date. It did not provide any medical documentation. It was simply a request or a last-minute plea to hold her job open indefinitely, and the law does not require employers to do that. Thank you. Thank you, counsel. Mr. Fox, I think your time has expired. You have one minute to rebuttal. Ms. Golden found out about the general leave of absence policy a day and a half before she was terminated. She had signed a handbook, yes, in 1999, but she was never, never informed by the defendant that such a policy existed. They say the policy existed for sabbaticals and military leave. Well, why not people for disabilities? To require Golden to present medical evidence of a return-to-work date without the employer requesting such evidence only provides an incentive for employers to ignore the interactive process and adopt non-individualized maximum leave policies. It then rewards the employer for not engaging in the interactive process. That is not the purpose of the ADA, and if they would have engaged in the interactive process, then Ms. Golden could have returned to work and continued her career as a public safety officer. If there are no further questions, thank you. Thank you, Mr. Fox. The case will be taken under advisement.